## Zalewski v. Pennsylvania Rabbit Breeders Coöperative Association

*Eugene R. Hartman,* for plaintiff.
*Bulleit & Bulleit,* for defendant.

SHEELY, P. J., December 30, 1950. — Plaintiff brought this action of assumpsit against defendant, an agricultural coöperative corporation organized under the Act of April 30, 1929, P. L. 885, 14 PS §81, to recover for architectural services rendered by him at the request of the organizers and promoters of the corporation. Defendant has filed preliminary objections in the nature of a rule for a more specific complaint, and a demurrer. The question presented on the demurrer is whether plaintiff has alleged facts sufficient to show liability on the part of defendant.

Plaintiff alleges that on January 5, 1949, he was engaged by Lloyd T. Goodling, who represented himself as the president of Consolidated Rabbit and Cavies Breeders Coöperative, a proposed corporation, the name of which was subsequently changed to Pennsyl-

vania Rabbit Breeders Coöperative, to design a building for the proposed corporation; that on February 8, 1949, plaintiff attended a meeting of the promoters of the proposed corporation, at which a majority was present, and at which Lloyd T. Goodling was elected president and Grace E. Egger was elected secretary; that a written agreement with plaintiff which had previously been signed by Goodling as president was then signed by Grace E. Egger as secretary, with the consent and authorization of a majority of the promoters; that plaintiff prepared preliminary drawings and revised preliminary drawings which were approved by Goodling and delivered at his direction on March 5, 1949; that on March 21, 1949, the promoters issued a letter requesting stock subscriptions which referred to the plant and equipment and to the fact that blueprints were available; that defendant company was incorporated by articles of incorporation dated February 12, 1949, and recorded in the office of the Recorder of Deeds of Adams County on March 23, 1949, which listed as directors seven persons who were the same persons as the promoters who had previously contracted with plaintiff before the incorporation. Plaintiff also pleaded an alternative cause of action based on the same facts but claiming on a quantum meruit. The final paragraph of the complaint is that "The work of preparing preliminary sketches, schemes 'A' and 'B', benefited defendant in judging the cost, size, expense and practicability of this proposed building for which the sketches were made".

Defendant corporation came into existence as a body politic and corporate on March 23, 1949, the date of the recording of the articles of incorporation in the office of the Recorder of Deeds: Act of April 30, 1929, P. L. 885, sec. 4, 14 PS §84. Prior to that time it did not exist and had no capacity to enter into any contract either directly or through an agent. As stated in

Tygert-Allen Fertilizer Company v. Tygert Company, 191 Pa. 336, 339 (1899):

"In general, a corporation cannot acquire rights legal or equitable, or become charged with an obligation before the moment of its creation. . . . It comes into existence at a particular moment by the mere will of the sovereign, and has no previous life of any kind. Its rights are created and fixed by the charter, and it is against public policy to hamper its career with unknown liabilities, affecting the interest as well of stockholders as of the public who deal with it."

Because of this principle the great weight of authority is that a corporation is not liable on the contracts of its promoters unless it has done something to adopt or ratify them, either expressly or impliedly. It may make itself liable on such contracts either by expressly adopting them, or by accepting their benefits with knowledge of the contract: See Annotation, 17 A. L. R. 452. In this case there is no allegation that the corporation either expressly adopted or attempted to ratify the contract between plaintiff and the promoters, so we need not consider the technical difficulties with that branch of the rule. Clearly, if defendant corporation is to be held liable in this case it must be on the theory that it accepted the benefits of the contract. The liability in such cases depends upon an implied contract or upon estoppel and is based on the proposition that if the company, with knowledge of the contract, accepts the benefit of it, it will be required to perform its obligation: Beltz v. Garrison et al., 254 Pa. 145, 152 (1916).

Plaintiff, in his brief, recognizes this rule but contends that the corporation did accept the benefits of the contract. The complaint contains no allegation of any act by defendant corporation which could be construed as an acceptance of the benefits of the contract with plaintiff. It is not alleged that the

proposed building was ever constructed or that the corporation used plaintiff's plans in any way. The nearest approach to such allegation is the last paragraph of the complaint which alleges that the work of plaintiff benefited defendant in judging the costs, etc., of the proposed building. The question, however, is not whether the work performed by the plaintiff benefited defendant corporation but whether defendant corporation accepted the benefits under the contract. Its liability must be predicated upon the fact that it accepted that which it would be unjust for it to retain without making payment therefor. A corporation or a person may be benefited by the unsolicited act of a third person without being liable to pay therefor. To establish its liability it is necessary to point to some affirmative act on its part, after its incorporation, which constituted an acceptance of the benefits of the contract. The negative act of rejecting the contract, or failing to accept it, perhaps because the building designed by plaintiff was too expensive, cannot constitute an acceptance of its benefits. When defendant corporation came into existence it was not bound by the contract, but had the election whether it would accept the benefits thereof and be bound by its terms or whether it would reject the contract entirely. See Bonner v. Travelers Hotel Co., Inc., et al., 276 Pa. 492 (1923). Having determined to reject, or not to accept, the contract for whatever reasons motivated it, it cannot be said that it accepted the benefits because of its opportunity to study the contract and plaintiff's sketches to determine whether it would accept them.

The fact that it is alleged that the promoters with whom plaintiff dealt are the same persons who were subsequently named in the articles of incorporation as directors is immaterial on this point. Prior to incorporation they could bind only themselves; subsequent to incorporation they were the representatives of the

corporation and their acts would affect not only themselves but also all of the stockholders and creditors of the corporation who had nothing to do with the prior contract with plaintiff. The assets of the corporation secured through subscriptions of the stockholders or upon credit extended by creditors cannot be made liable for the personal obligations of the directors.

The case most nearly in point on the facts is Bell's Gap Railroad Co. v. Christy, 79 Pa. 54 (1875). Plaintiff in that case, who was one of the organizers of defendant company, sued to recover money expended by him in procuring the charter, and paying surveyors to make explorations and to run the line of the proposed railroad before the corporation came into existence. Plaintiff there contended that defendant had accepted the results of his work and thereby became liable to pay him. The road actually built was on an entirely different line than that for which plaintiff had surveys made. The court there said:

"We do not desire to controvert the principle, established in England, and to some extent recognised in this country, that when the projectors of a company enter into contracts in behalf of a body not existing at the time, but to be called into existence afterwards, then if the body for whom the projectors assumed to act does come into existence, it cannot take the benefit of the contract without performing that part of it which the projectors undertook that it should perform. Conceding to this principle its full force and effect, we are unable to see its application to the facts of this case. It may very well be that where a number of persons not incorporated are yet informally associated together in the pursuit of a common object, and with the intent to procure a charter in the furtherance of their design, they may authorize certain acts to be done by one or more of their number, with an understanding that compensation shall be made therefor by the company

when fully formed. *And if such acts are necessary to the organization and its objects, and are subsequently accepted by the company, and the benefits thereof enjoyed by them,* they must take such benefits cum onere, and make compensation therefor. But the projectors or promoters of the enterprise within the meaning of the rule referred to, evidently must be a majority at lease of such persons, and not one, two, or three, or a small minority thereof. Such minority can have no more authority to bind the association or corporation in its incipient or inchoate condition than they would have to bind it if fully organized. In this case the two or three persons who it is alleged promised the plaintiff to see him paid, bound no one but themselves. They had no authority to speak for anyone else. *In the absence of any such authority and of any satisfactory proof that the result of the plaintiff's labor and expenditures was accepted and enjoyed by the corporation, that it used the plaintiff's survey or located its road upon any considerable portion of the line thereof, the court below should have instructed the jury that the defendants were not liable.*" (Italics supplied.)

It was also held that the trial court should have affirmed a point for binding instructions on the ground that the survey was of no benefit to defendants.

The rule announced in Bell's Gap Railroad Company case has been followed in subsequent cases in Pennsylvania, and in no case has liability been imposed on a corporation for contracts made by its promoters in which the corporation has not done some act accepting the benefits of the contract or adopting the contract. It follows that plaintiff has failed to allege facts sufficient to show liability on the part of defendant, and defendant's preliminary objections in the nature of a demurrer must therefore be sustained unless plaintiff shall, within 20 days of this date, file an amended complaint alleging acts done by defendant subsequent to its incorporation which would constitute an acceptance of the benefits of the contract.

And now, December 30, 1950, defendant's prelimi-

nary objections are sustained and it is directed that judgment be entered thereon in favor of defendant and against plaintiff unless plaintiff shall within 20 days of this date file an amended complaint alleging acts done by defendant subsequent to its incorporation which would constitute an acceptance of the benefits of the contract.