**In re J & JB, INC., d/b/a Subway, Debtor.**

**DOCTOR'S ASSOCIATES, INC.; Subway Real Estate Corp.; and Subway Restaurants, Inc., Movants,**

v.

**J & JB, INC., d/b/a Subway; and Stanley G. Makoroff, Esquire, Trustee, Respondents.**

**Bankruptcy No. 93–23535–BM. Motion Nos. 94–1279M, 94–1280M and 94–1281M.**

**United States Bankruptcy Court, W.D. Pennsylvania.**

**Dec. 21, 1994.**

Stephen J. Jurman, McCann Garland Ridall & Burke, Pittsburgh, PA, for Doctor's Associates, Inc., Subway Real Estate Corp., Subway Restaurants, Inc.

John R. Banke, II, Monroeville, PA, for debtor J & JB, Inc., James A. Brown.

Stanley G. Makoroff, Trustee, Mark S. Seewald, Sable Makoroff & Gusky, P.C., Pittsburgh, PA.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Several matters are before the court at this time.

Doctor's Associates, Inc. has brought a motion (at No. 94–1279M) seeking payment as an administrative expense of postpetition

royalties and advertising fees that accrued pursuant to certain franchise agreements.

Subway Real Estate Corporation and Subway Restaurants, Inc. have brought motions (at Nos. 94–1280M and 94–1281M, respectively) seeking payment as an administrative expense of postpetition rentals that accrued pursuant to certain subleases.

The chapter 7 trustee does not object to payment of the requested chapter 11 administrative expenses. He does, however, strenuously object to payment of the requested chapter 7 administrative expenses. According to the chapter 7 trustee, the bankruptcy estate is not liable for these expenses because debtor never had a contractual relationship with movants.

Though the trustee does not fully express his position, it appears to the court that he argues that he never indicated a willingness to run this business in chapter 7; he never requested the court grant him authority to run the business in chapter 7; and the court never authorized or directed him to run the business in chapter 7. To the contrary, the trustee took action against the principals of the debtor to assure all parties in interest that this estate would incur no further chapter 7 administrative debt.

Movants concede that debtor never had a contractual relationship with them but argue that the bankruptcy estate nonetheless is liable for the requested chapter 7 administrative expenses because debtor ratified the contracts and enjoyed the benefits thereof during the chapter 7 phase of this case.

Movants' request for payment of postpetition expenses will be granted in part and denied in part. Their request for payment of chapter 11 administrative expenses will be granted because it is unopposed. However, their request for payment of chapter 7 administrative expenses will be denied. The trustee's objection thereto will be sustained.

I

FACTS

On June 1, 1987, James L. Brown, James A. Brown and Doctor's Associates, Inc. entered into a franchise agreement for operation of Subway Sandwich Shop franchise # 3217 at Boulevard Plaza in Monroeville, Pennsylvania. On August 21, 1987, James L. Brown and James A. Brown entered into a sublease with Subway Restaurants, Inc. for operation of the franchise at that location.

Shortly thereafter, in September of 1987, James L. Brown and James A. Brown formally incorporated J & JB, Inc.

On October 20, 1987, James L. Brown and James A. Brown entered into a second franchise agreement with Doctor's Associates for operation of Subway Sandwich Shop franchise # 3837 at McIntyre Square in Ross Township, Pennsylvania.

James L. Brown and James A. Brown entered into a third franchise agreement with Doctor's Associates on August 23, 1988 for operation of Subway Sandwich Shop franchise # 5207 at Holiday Center, Monroeville, Pennsylvania. On August 10, 1989, James L. Brown and James A. Brown entered into a written sublease with Subway Restaurants, Inc. for operation of the franchise at the Holiday Center location.

On September 15, 1990, James L. Brown, James A. Brown, and Joyce A. Brown entered into another franchise agreement with Doctor's Associates for operation of Subway Sandwich Shop franchise # 10316 at Edgewood Center in Edgewood, Pennsylvania. These same individuals had entered into a written sublease with Subway Real Estate Corporation on August 30, 1990, for operation of the franchise at that location.

On January 22, 1993, James L. Brown and James A. Brown entered into a written sublease with Subway Real Estate Corporation for operation of franchise # 3837 at the McIntyre Square location.

Debtor J & JB, Inc. was not a party to any of the above agreements. The Browns entered into all of these agreements in their individual capacities and on their own behalves, not on behalf of J & JB, Inc. At no time did the Browns assign their rights under these agreements to J & JB, Inc.

On October 6, 1993, a joint voluntary chapter 11 petition was filed at Bankruptcy No. 93–23535–BM by J & JB, Inc., James L.

Brown, James A. Brown, and Joyce A. Brown, doing business as Subway.

All four Subway franchises continued to operate during the chapter 11 proceeding. The role of J & JB, Inc. in the operation of the franchises prior to or subsequent to October 6, 1993 is unexplained.

On January 6, 1994, the United States of America brought a motion to dismiss for want of subject-matter jurisdiction. It argued that this court lacked jurisdiction under the Bankruptcy Code over a joint case filed by a corporation and three individuals. It asked that, at a minimum, the parties depriving the court of jurisdiction be dismissed from the case.

In response to the motion by the United States, J & JB, Inc. moved on January 26, 1994, to sever the individual debtors from its case. An order was issued on February 8, 1994, granting the motion of J & JB, Inc. and, accordingly, the Browns were no longer debtors herein.

On February 10, 1994, a rule to show cause was issued why the case should not be converted to a chapter 7 proceeding due to debtor's apparent inability to reorganize.

James L. Brown and Joyce A. Brown filed a voluntary joint chapter 13 petition on March 1, 1994 at Bankruptcy No. 94–20608–JKF.

The present case was converted to a chapter 7 proceeding on March 15, 1994, when debtor conceded that conversion to chapter 7 was appropriate. The order converting the case also directed debtor to file a list of all postpetition claimants.

A chapter 7 trustee was appointed on March 16, 1994. At no time did the chapter 7 trustee request permission pursuant to § 721 of the Bankruptcy Code to operate the business of debtor J & JB, Inc. on an interim basis during the chapter 7 proceeding.

James L. Brown and Joyce A. Brown, individual debtors at Bankruptcy No. 94–20608–JKF, continued to operate the four franchises and did business as Subway subsequent to conversion to chapter 7 in this case and during their own chapter 13 case.

During this time, James L. Brown and Joyce A. Brown sought to use the listed telephone numbers for the Subway franchises. The chapter 7 trustee in this case took the position that the listings of those numbers were assets of the estate of J & JB, Inc. and refused to authorize the transfer of those listings to the Browns or to abandon them without an order of this court authorizing him to do so.

On April 13, 1994, debtor J & JB, Inc. filed a motion to direct the chapter 7 trustee to withdraw an alleged directive to the telephone company to cease providing service to the Browns under the numbers in question. According to the Browns, the phone listings were being utilized by them individually while they were operating their own business pursuant to franchises which they individually owned.

An order was entered after a hearing on April 15, 1994, which authorized the chapter 7 trustee to abandon the disputed telephone numbers. Furthermore, it stated that any obligations arising out of the use of the numbers after October 6, 1993, would be the obligation of James L. Brown and Joyce A. Brown only.

On May 23, 1994, an order was entered dismissing the chapter 13 case of James L. Brown and Joyce A. Brown at Bankruptcy No. 94–20608–JKF as of June 1, 1994. The order also directed the chapter 13 trustee in that case to turn over to the chapter 7 trustee in this case all funds received from the Browns during their chapter 13 case. The directive was based on the Browns' representation at the § 341 meeting of creditors that all funds in the hands of the chapter 13 trustee had been generated from their operation of J & JB, Inc. That same order also directed the Browns to turn over to the chapter 7 trustee in this case all funds under their control that were generated by the business operations of J & JB, Inc., as well as any funds they generated while doing business individually as Subway franchisees. The court made no finding as to when the funds were generated. Specifically, the court did not determine that the funds were generated while debtors's principals were in chapter 13 or consider whether they were

**28**

earned prepetition or during the period debtor was in chapter 11 or after conversion to chapter 7.

The Browns ceased operating the four Subway franchises and vacated the premises between April of 1994 and June of 1994.

On August 9, 1994, Doctor's Associates, Subway Real Estate Corporation, and Subway Restaurants, Inc. filed motions for payment of postpetition expenses that are before the court at this time.

Doctor's Associates seeks payment (at Motion No. 94–1279M) of royalties and advertising fees as postpetition expenses. Specifically, it seeks payment of $36,134.67 as a chapter 11 administrative expense and payment of $21,682.06 as a chapter 7 administrative expense.

Subway Real Estate Corporation seeks payment (at Motion No. 94–1280M) of unpaid rent as a postpetition expense. Specifically, it seeks payment of $27,241.99 as a chapter 11 administrative expense and payment of $17,445.89 as a chapter 7 administrative expense.

Subway Restaurants, Inc. also seeks payment (at Motion No. 94–1281M) of unpaid rent as a postpetition expense. Specifically, it seeks payment of $29,407.74 as a chapter 11 administrative expense and payment of $8,613.06 as a chapter 7 administrative expense.

The chapter 7 trustee asserted in response to the above motions that debtor's estate is not liable for the expenses incurred subsequent to conversion to chapter 7 because debtor never operated or sought authority to operate in chapter 7 and because debtor did not have a contractual relationship with movants.

An evidentiary hearing was held on the motions and the chapter 7 trustee's objection thereto. All parties were given an opportunity to offer evidence on the issues before the court. At the hearing, the trustee asserted that he did not object to payment of the above expenses incurred during the chapter 11 phase of the case. He remained opposed, however, to the requests for payment of expenses incurred subsequent to conversion to chapter 7 on March 15, 1994.

## II

## ANALYSIS

Section 721 of the Code provides as follows:

> The court may authorize the trustee to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate.

11 U.S.C. § 721.

The trustee in the present case did not request permission and did not receive authorization pursuant to § 721 to operate debtor's business subsequent to conversion. To the contrary, the trustee endeavored to assure that debtor would not incur any chapter 7 administrative expenses when he refused to authorize the telephone company to transfer debtor's phone numbers to debtor's principals.

It is undisputed that no privity of contract existed between debtor and the movants. The franchise agreements and subleases were executed by debtor's principals in their individual capacities. They did not execute the agreements as officers of J & JB, Inc. and did not assign their rights under these agreements to debtor. When debtor's principals continued operating under the agreements after the filing of the chapter 11 petition, they did so in their own right.

The issue before the court is whether debtor's bankruptcy estate is liable to movants for royalties, advertising fees, and rentals for the period subsequent to conversion to chapter 7 even though debtor did not operate its business in chapter 7 and was not a party to any of the franchise agreements or subleases with movants.

As noted, the chapter 7 trustee has conceded that expenses incurred during the chapter 11 phase of the case are allowable but steadfastly objects to the request for payment of such expenses incurred after conversion to chapter 7.[1] According to the

---

1. The most likely explanation for why the trustee has not objected to the requests for payment of

chapter 7 trustee, the estate is not liable for these obligations because debtor had no contractual relationship with movants.

Movants assert that the absence of such a contractual relationship does not matter and insist that their chapter 7 administrative claims should be allowed because the bankruptcy estate has received the benefit of the contracts entered into by debtor's principals.

Movants aver that the debtors at Bankruptcy No. 94–20608–JKF made payments to the chapter 13 trustee in that case from profits they realized from operating the four Subway franchises during their own chapter 13 proceeding and during the present bankruptcy case. These funds eventually were transferred pursuant to court order to the chapter 7 trustee in this case. According to movants:

> [t]he Trustee's argument that J & JB, Inc. is not liable on this claim because it was not a party to the contracts, is not correct. To the extent that J & JB, Inc. received the money from the operation of the business, it became contractually and equitable (sic) obligated upon the executory contracts which made that possible.

Movants have cited to *In re Villa Roel,* 57 B.R. 879 (Bankr.D.D.C.1985) as support for the proposition that they ought to be treated as postpetition creditors even though the only contractual relations they had were with debtor's principals, not with debtor.

Movants' argument is without merit and must be rejected for the following reasons.

■ A corporation under certain circumstances may be liable for actions taken by its promoters or principals. For instance, preincorporation activities of a promoter may form the basis for corporate liability when those activities have been ratified by postincorporation actions by the corporation. *See McCloskey v. Charleroi Mt. Club,* 390 Pa. 212, 216–17, 134 A.2d 873, 876 (1957).

■ Pre-incorporation activities by a corporation's promoter also may be considered in determining whether a court has *in per-*

*sonam* jurisdiction over the corporation, provided the promoter's activities have been ratified by the corporation subsequent to its incorporation. *See Rees v. Mosaic Technologies, Inc.,* 742 F.2d 765, 768–69 (3d Cir.1984).

Relying to a great extent upon *Rees,* the *Villa Roel* court held that a corporation may be liable on a contract entered into by its promoters (but not by the corporation itself), provided that the corporation has accepted the benefits of that contract:

> It is a long-settled rule of law that a corporation may render itself liable on preliminary contracts made by its promoters by accepting the benefits therefrom, thereby adopting the contract by implication or estoppel. *Rees v. Mosaic Technologies, Inc.,* 742 F.2d 765 (3d Cir.1984); *see Air Traffic & Service Corp. v. Fay,* 196 F.2d 40 (D.C.Cir.1952). "Similarly, a corporation is liable under a lease made by its promoters if it enters into possession under such lease." 18 Am.Jur.2d *Corporations,* 122, p. 665 (1965).

*In re Villa Roel,* 57 B.R. at 881.

■ Our case is readily distinguishable from *Villa Roel* and the other cases in that the actions undertaken by the Browns under the franchise agreements and the subleases were never ratified during the chapter 7 phase of the present case.

In the first place, debtor was not involved at all in operating the four Subway franchises subsequent to conversion to chapter 7 on March 15, 1994. To the contrary, debtor had ceased doing any business whatever as of that time and became defunct. The four franchises were operated by debtor's principals, the Browns, on their own behalf. Accordingly, there is no basis for asserting that subsequent to conversion to chapter 7 debtor ratified the contracts its principals had entered into in their own names.

Movants make much of the fact that funds in possession of the chapter 13 trustee at Bankruptcy No. 94–20608–JKF were transferred pursuant to an order of court issued in that case on May 23, 1994, to the chapter 7

---

chapter 11 administrative expenses is that little or nothing will be available for distribution to chapter 11 administrative claimants after distri-

bution is made for chapter 7 administrative expenses.

trustee in this case. According to movants, ratification of the contracts by debtor and/or the chapter 7 bankruptcy estate may be inferred from this transfer. Movants' reliance upon this event is misplaced.

The burden of proof for a claim is upon different parties at different times. *See In re Allegheny International, Inc.,* 954 F.2d 167, 173 (3d Cir.1993). The initial burden is upon the claimant to alleged facts sufficient to support the claim. If it does so, its claim is *prima facie* valid. *Id.* At that point, the burden then shifts to the objector to come forward with evidence negating the claim. The evidence presented must be "equal in force" to the *prima facie* case. *Id.* If the objector comes forward with sufficient evidence to negate one or more of the facts supporting the claim, the burden then reverts back to the claimant to prove the validity of the claim by a preponderance of the evidence. *Id.* at 174. Although the burden of proof may shift back and forth in this manner, the ultimate burden of persuasion remains at all times with the claimant. *Id.*

Movants have failed to meet their burden of persuasion in this instance. Ratification by debtor or by the chapter 7 bankruptcy estate cannot be inferred from the transfer of funds from the chapter 13 trustee to the chapter 7 trustee in this case.

In particular, movants have failed to demonstrate that these funds were earned by debtor's principals during the chapter 7 phase of this case. It is just as likely (if not more so) that the funds were earned by the Browns prior to conversion to chapter 7 as it is likely that they were earned subsequent thereto. There is no basis for finding one way rather than the other. The testimony of James L. Brown on this point was neither clear nor persuasive. As a consequence, there is no basis for concluding that debtor or its bankruptcy estate enjoyed the benefits of the above contracts subsequent to conversion and that they therefore may be said to have ratified the contracts.

To summarize, movants have failed to establish that debtor's estate should be held liable in any way for unpaid royalties, advertising fees, and rents that accrued subsequent to conversion of this case to a chapter 7 proceeding. There is no credible proof that the funds were generated while this debtor was in chapter 7 and/or that the activities of debtor's principals or movants benefitted this chapter 7 estate. Their requests that these expenses be paid as administrative expenses of the chapter 7 estate accordingly must be denied.

An appropriate order shall be issued.

### ORDER OF COURT

AND NOW at Pittsburgh this 21st day of December, 1994, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** as follows:

(1) the motion by Doctor's Associates, Inc., filed at Motion No. 94–1279M, for payment of postpetition expense is **GRANTED IN PART AND DENIED IN PART.** It is awarded the sum of $36,134.67 as a chapter 11 administrative expense. Its request for payment of the sum of $21,682.06 as a chapter 7 administrative expense is **DENIED.**

(2) the motion by Subway Real Estate Corporation, filed at Motion No. 94–1280M, for payment of postpetition expense is **GRANTED IN PART AND DENIED IN PART.** It is awarded the sum of $27,241.99 as a chapter 11 administrative expense. Its request for payment of the sum of $17,445.89 as a chapter 7 administrative expense is **DENIED.**

(3) the motion by Subway Restaurants, Inc., filed at Motion No. 94–1281M, for payment of postpetition expense is **GRANTED IN PART AND DENIED IN PART.** It is awarded the sum of $29,407.74 as a chapter 11 administrative expense. Its request for payment of the sum of $8,613.06 as a chapter 7 administrative expense is **DENIED.**

IT IS SO **ORDERED.**